627 So.2d 1321 (1993)
Linda BASS, Appellant,
v.
FLORIDA DEPARTMENT OF LAW ENFORCEMENT, CRIMINAL JUSTICE STANDARDS AND TRAINING COMMISSION, Appellee.
No. 92-2669.
District Court of Appeal of Florida, Third District.
December 14, 1993.
Linda Bass, in pro. per.
Dawn Pompey Whitehurst, Tallahassee, for appellee.
Before FERGUSON, COPE and GODERICH, JJ.
PER CURIAM.
The hearing officer erred in not permitting the appellant's expert witness to testify. Only "irrelevant, immaterial, or unduly repetitious evidence shall be excluded" during formal agency proceedings. Section 120.58(1)(a), Fla. Stat. (1991). Moreover, "in administrative proceedings the formalities in the introduction of testimony common to the courts of justice are not strictly employed." De Groot v. Sheffield, 95 So.2d 912, 916 (Fla. 1957); see also Sauls v. De Loach, 182 So.2d 304 (Fla. 1st DCA), cert. denied, 188 So.2d 823 (Fla. 1966). Accordingly, we reverse and remand for further proceedings.
COPE and GODERICH, JJ., concur.
FERGUSON, Judge (concurring).
I concur in the result and write separately to add more facts.
Mrs. Bass was hired as a Dade County Corrections Officer in 1982. Over the years she built a fine employment record receiving numerous commendations and outstanding performance evaluations. Mrs. Bass selected August 8, 1990, as the date for her biannual physical examination which included an alcohol and drug test. According to the laboratory, her urine sample tested positive for the presence of cocaine. On the basis of the test result, she was terminated from employment.
*1322 When Mrs. Bass learned of the results of the urine test, she voluntarily underwent further drug testing. The results of these subsequent tests, which included a hair analysis test, showed no evidence of cocaine use. Included in the results was a report by Dr. Weiner Baumgartner which suggested a scientific basis for a false positive reading on the August 8th urinalysis test.
At a formal hearing requested by Mrs. Bass, she sought to introduce evidence of the hair analysis test and the letter from Dr. Baumgartner explaining how a false positive reading could have been obtained on the urinalysis. The hearing officer refused to admit this evidence.
Exclusion of the evidence was error. The radioimmunoassay analysis of human hair to determine cocaine use is generally accepted in the scientific community. See, e.g., United States v. Riley, 906 F.2d 841 (2d Cir.1990); United States v. Medina, 749 F. Supp. 59 (E.D.N.Y. 1990); In re Adoption of Baby Boy L, 157 Misc.2d 353, 596 N.Y.S.2d 997 (N.Y. Fam. Ct. 1993); Cole v. Texas, 839 S.W.2d 798 (Tex. Crim. App. 1990); Burgel v. Burgel, 141 A.D.2d 215, 533 N.Y.S.2d 735 (1988). See generally Harkey & Henderson, Hair Analysis for Drugs of Abuse, 2 Advances in Analytical Toxicology 298 (1985) (hair analysis can provide more accurate history of drug use than conventional urinalysis); Graham, Koren, Klein, Schneiderman & Greenwald, Determination of Gestational Cocaine Exposure of Hair Analysis, 262 JAMA 3328 (1989) (RIA hair analysis may remedy the disadvantages of standard blood and urine tests). The hair analysis therefore meets the test for admissibility of novel scientific evidence as enunciated in Frye v. United States, 293 F. 1013 (D.C. Cir.1923). See also Flanagan v. State, 625 So.2d 827 (Fla. 1993) (Florida continues to follow the Frye test for admissibility of scientific evidence).[1]
Furthermore, the exclusion of Mrs. Bass's expert's opinion regarding a false positive reading on the urinalysis was error. That testimony was admissible to rebut the State's claim that the urinalysis test was reliable. See Charles W. Ehrhardt, Florida Evidence § 702.2 at 500 (1993 ed.) (expert testimony interpreting the results of a scientific test is admissible).
Finally, Mrs. Bass's evidence should not have been excluded on the basis of hearsay. Under section 120.58(1)(a), Florida Statutes (1991), hearsay is admissible for the purpose of supplementing or explaining other evidence. Because the documents submitted by Bass were offered to explain and rebut the scientific evidence offered by the appellee, they were admissible.
NOTES
[1] The Frye test, which applied a "general acceptance" standard for the admission of expert testimony, was superseded by the adoption of the Federal Rules of Evidence, particularly, rule 702. Interpreting rule 702 in Daubert v. Merrell Dow Pharmaceuticals, Inc., ___ U.S. ___, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court held that in order to qualify as admissible scientific knowledge, an inference or assertion need only be derived by the scientific method and be supported by appropriate validation. After Daubert the Florida supreme court restated its adherence to the Frye standard.